<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ERNEST PIZIO,<br><br>        Plaintiff,<br><br>v.<br><br>HTMT GLOBAL SOLUTIONS, formerly SOURCE 1 HTMT, INC.,<br><br>        Defendant. | Civil Action No. 09-1136 (JLL)<br><br>**OPINION** |

**LINARES, District Judge.**

This matter comes before the Court by way of HTMT Global Solutions ("HTMT" or "Defendant")'s motion for summary judgment as to Ernest Pizio ("Plaintiff")'s claim of age discrimination under the Age Discrimination in Employment Act ("ADEA"). [CM/ECF No. 103.] The Court has considered the submissions made in support of and in opposition to Defendant's motion, and decides this matter without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons set forth below, Defendant's motion for summary judgment is denied.

## I.    <u>BACKGROUND</u>

As the Court writes only for the parties, it will set forth only those facts it deems relevant to deciding Defendant's motion.

On November 24, 2004, Defendant hired Plaintiff as the Vice President of Business Development at the age of 56. (Defendant's Rule 56.1 Statements of Undisputed Material Fact ("Defendant's Rule 56.1 Statement"), ¶¶ 5, 7.) Robert Ferrante ("Ferrante"), HTMT's Vice President of Sales and Plaintiff's friend and colleague, personally hired Plaintiff. (*Id.* at ¶10.) He

1

also supervised Plaintiff directly. (*Id.* at ¶10.) M.S. Varadan ("Varadan") was the President of HTMT at the time Plaintiff was hired and was nearly 60 years old. (*Id.* at ¶16.) Partha de Sarkar ("Sarkar") was the Chief Executive Officer. (Docket #103-24: ¶1.)

Ferrante resigned about six months after Plaintiff began working with HTMT. (*Id.* at ¶31.) At that point, Plaintiff had not made any sales. (*Id.*) Still, Plaintiff sought to be considered for Ferrante's vacant position. (*Id.* at ¶33.) Defendant was not actively seeking candidates for the position at the time because Defendant wanted to offer the position to Ken Gary ("Gary"), who had been with the company for 7-8 years. (*Id.* at ¶18, 35.) Gary was 47 years old when he assumed the position. (*Id.* at ¶37.)

While Gary was Vice President of Sales, Defendant implemented a Sales Incentive Plan (the "Plan") under which all salespeople were subject to an annual sales quota of $2 million per year. (*Id.* at ¶39.) Plaintiff made one sale during this time, and it had not started generating revenue by the time the Vice President of Sales position became open again. (*Id.* at ¶40.)

Gary resigned as Vice President of Sales almost a year and a half after HTMT hired Plaintiff. (*Id.* at ¶¶ 40, 42.) Again, Plaintiff applied for the vacant position. (*Id.* at ¶41.) Though the parties disagree whether HTMT was actively interviewing for the position, it is undisputed that Sarkar, Varadan, and an HR representative interviewed Plaintiff for the opening. (*Id.*) Defendant claims that Sarkar told Plaintiff that Plaintiff's sales performance was unsatisfactory and that he was not qualified for the position.[1] (*Id.* at ¶43.)

---

[1] Plaintiff alleges, however, that he "did not hear from the Defendants after the interview, and the VP of Sales position was not filled at that time." (Plaintiff's Response to Defendant's Rule 56.1 Statement, Disputed Material Facts ("Plaintiff's Disputed Facts"), ¶24.) He claims that when he followed up with Varadan about the promotion, Varadan told him "that he was not given serious consideration for the VP of Sales position because he 'was too old and the rest of the management staff was in their forties[.]'" (*Id.* at ¶26.) Plaintiff also points to an email he sent to Varadan some time after this conversation in which Plaintiff noted that the only reason he had been given for not being promoted was his age. (Docket #106, Exhibit S.) Almost a month after this email, Plaintiff again emailed Varadan "inquiring as to how he could overcome the 'age issue' to become an equal member of the team." (Docket #106, Exhibit U.) Varadan responded to this email with "Ernie thanks[.]" (*Id.*) Plaintiff argues that this is direct

Around the time that Gary resigned, Defendant began looking for salespeople with experience in offshore sales and in the banking and financial industry. (*Id.* at ¶44.) In June 2006, Defendant hired Ramesh Anand ("Anand"). (*Id.* at ¶44.) Though Anand was younger than Plaintiff, he had experience in off-shore sales. (*Id.* at ¶¶47, 49.)

On November 6, 2006, Defendant acquired Affina, which had a strong sales force focused on consumer electronics and consumer products. (*Id.* at ¶¶56-58.) Prior to this acquisition, Plaintiff had closed on a deal with Brother, a client of Affina. (*Id.* at ¶¶40, 60.) Because Affina and HTMT shared some customers, this acquisition created an overlap between Plaintiff's sales effort and the sales effort of this recently acquired company. (Docket #106-5, 27; Exhibit G, 89: ¶¶ 24-25 – 90: ¶¶1-8.)

Plaintiff had a performance review in February 2007. (Defendant's Rule 56.1 Statement at ¶71.) At that point, he had only made two sales, which generated a total of $685,145.00 in revenue. (*Id.* at ¶¶70-71.) This deficiency in sales was communicated to Plaintiff in his review. (*Id.* at ¶74.) According to Defendant, Plaintiff was assigned to a new vertical – hospitality/travel – in order to help him improve his sales performance. It typically took 12 to 18 months for someone to make a sale in this vertical. (Docket #106-5, 18; Exhibit G, 55: ¶¶ 18-20, 56: ¶¶3-11.) However, Plaintiff was given less than two months to make a sale.

Defendant fired Plaintiff in March 2007. (Defendant's Response to Plaintiff's Rule 56.1 Statement, ¶2.) At that point, the revenue generated by Plaintiff's sales was $784,238.00, below the $2 million requirement. (Defendant's Rule 56.1 Statement at ¶72.) Defendant claims that the decision to terminate Plaintiff was based exclusively on Plaintiff's poor sales performance. (*Id.* at ¶77.)

---

evidence of age discrimination. However, because this evidence is not necessary to rule of Defendant's motion, this Court did not include it in its analysis.

Plaintiff originally alleged a claim of race discrimination under Title VII of the Civil Rights Act of 1964 and two claims of age discrimination under the ADEA (one for failure to promote and another for his termination) against Defendant. (Docket #1.) This Court granted Defendant's motion for summary judgment as to all of Plaintiff's claims for failure to exhaust administrative remedies. (Docket #93; Docket #94.) Following Plaintiff's appeal, the Third Circuit reversed and remanded only the cause of action for age discrimination based on his termination. *Pizio v. HTMT Global Solutions*, 555 F. App'x 169 (3d Cir. 2014). On April 25, 2014, Defendant filed a motion for summary judgment as to Plaintiff's sole remaining claim. (Docket #103.)

## II.    <u>LEGAL STANDARD</u>

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must first demonstrate that there is no genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317 (1986). Courts construe facts and inferences in the light most favorable to the non-movant in order to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed. 202 (1986). An issue is "genuine" if the evidence is such that a reasonable jury could find for the non-moving party. *Id.* at 248. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted). "Thus, if a reasonable fact finder could find in the nonmovant's favor, then summary judgment may not be granted." *Norfolk Southern Ry. Co. v. Basell USA Inc.*, 512 F.3d 86, 91 (3d Cir. 2008).

4

## III.   **DISCUSSION**

In order for Plaintiff's claim of age discrimination to survive summary judgment, he must "show that his ... age 'actually motivated' or 'had a determinative influence on' the employer's adverse employment decision." *Fasold v. Justice*, 409 F.3d 178, 183 (3d Cir. 2005) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 141 (2000)). He can satisfy this burden: "(1) by presenting direct evidence of discrimination[2], or (2) by presenting indirect evidence of discrimination that satisfies the familiar three-step framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)." *Id.*

Under the *McDonnell Douglas* framework, a plaintiff bears the initial burden of establishing a prima facie case of unlawful discrimination. *McDonnell Douglas,* 411 U.S. at 802; *Fasold*, 409 F.3d at 183. If the plaintiff succeeds in establishing a prima facie case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employee's termination. *McDonnell Douglas,* 411 U.S. at 802. Once the employer articulates such a reason, "the aggrieved employee must then proffer evidence that is sufficient to allow a reasonable finder of fact to find by a preponderance of the evidence that the employer's proffered reasons are false or pretextual." *Fasold*, 409 F.3d at 183 (citing *Sarullo v. United States Postal Serv.,* 352 F.3d 789, 797 (3d Cir.2003) (per curiam)).

Defendant moves for summary judgment as to Plaintiff's claim of age discrimination under the ADEA.  In doing so, Defendant argues that: (1) Plaintiff cannot meet his burden of

---

[2] Plaintiff argues that (1) Varadan's remark about not considering Plaintiff for promotion because of his age and (2) an email that alludes to Plaintiff's "age issue" are both direct evidence of age discrimination. (Plaintiff's Br., 12-16.) This Court disagrees. Direct evidence of discrimination is "evidence which, if believed, would prove the existence of the fact in issue *without inference or presumption.*" *Torre v. Casio, Inc.,* 42 F.3d 825, 829 (3d Cir.1994). (emphasis in original). If "the trier of fact must *infer* the discrimination on the basis of age from an employer's remarks[,]" that evidence is considered circumstantial. *Id.* (emphasis in original). The fact at issue here is only whether Defendant fired Plaintiff because of his age. Defendant's failure to promote Plaintiff has already been dismissed by this Court for Plaintiff's failure to exhaust his administrative remedies in a timely manner. Though this Court might have been able to presume, based on this evidence, that Plaintiff was not promoted because of his age, it cannot do the same for the issue of Plaintiff's dismissal.

establishing a prima facie claim of age discrimination and (2) Plaintiff cannot show that Defendant's proffered legitimate non-discriminatory reason for terminating Plaintiff is pretextual. This Court disagrees.

A.   Plaintiff Established a Prima Facie Claim of Age Discrimination Against Defendant.

In order to establish a prima facie case of discrimination, Plaintiff must demonstrate that (1) he is over forty, (2) suffered from an adverse employment decision, (3) is qualified for the position in question, and (4) that his replacement was sufficiently younger "to support an inference of discriminatory animus." *Smith v. City of Allentown*, 589 F.3d 684, 689 (3d Cir. 2009). The burden of establishing a prima facie case of disparate treatment is not onerous. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *see also Taylor v. Amcor Flexibles, Inc.*, 507 F. App'x 231, 233 (3d Cir. 2012) (holding that the plaintiff's sales record alone was sufficient to establish that he was qualified for the position in question). In fact, this first stage of the *McDonnell-Douglas* paradigm is "flexible and must be tailored to fit the specific context in which it is applied." *Sarullo.*, 352 F.3d at 797-98 (citing *Geraci v. Moody–Tottrup, Int'l, Inc.*, 82 F.3d 578, 581 (3d Cir.1996)). This "framework… was 'never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.'" *Weldon v. Kraft, Inc.*, 896 F.2d 793, 798 (3d Cir. 1990) (quoting *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577 (1978)).

Here, Plaintiff easily satisfies the first two prongs of his prima facie case because it is undisputed that Plaintiff was over forty years old when Defendant terminated his employment. (Defendant's Rule 56.1 Statement, ¶¶ 5, 7, 78.) Still, Defendant argues that Plaintiff cannot show that HTMT took an adverse employment action against him. (Defendant's Br. in Support of its

Motion for Summary Judgment ("Defendant's Br."), 21.) Defendant contends that, in order to satisfy the second prong, Plaintiff must show that Defendant dismissed him even though he was performing his job satisfactorily. (Defendant's Br., 21.) This is an incorrect interpretation of this element of the prima facie case. Whether or not Plaintiff performed his job satisfactorily is irrelevant for the purpose of establishing a prima facie case of age discrimination; rather, his job performance is the focus of the pretext analysis. *See Weldon v. Kraft, Inc.*, 896 F.2d 793, 798-99 (3d Cir. 1990) (explaining that if courts prevented plaintiffs from moving past the prima facie phase of the *McDonnell Douglas* framework because they failed to show they possess "certain subjective qualities[,]" then courts would be unable to determine whether an employer's reliance on that quality was pretext for discrimination). Defendant acknowledged that it terminated Plaintiff's employment in March 2007, and thus Plaintiff has shown that he was subjected to an "adverse employment action." (Defendant's Rule 56.1 Statement, ¶78.)

With regards to the third prong of the prima facie case, courts consider a plaintiff's qualifications objectively. *Sempier v. Johnson & Higgins*, 45 F.3d 724, 729 (3d Cir. 1995) (noting that the plaintiff's work experience and educational background qualified him "as a viable candidate for the positions he held"). Defendant argues that Plaintiff cannot show that he was qualified for the position because he was not performing his job satisfactorily. (Defendant's Br., 21.) Again, this is not the correct prima facie standard.

Plaintiff only has to show that he had the necessary qualifications for the Vice President of Business Development position. *Sempier*, 45 F.3d at 729; *Amcor Flexibles, Inc.*, 507 F. App'x at 233. This is not an onerous burden. *Burdine*, 450 U.S. at 253. Determining whether or not Plaintiff performed his job satisfactorily is part of the pretext stage of the *McDonnell-Douglas* framework. *See Weldon*, 896 F.2d at 798 (explaining that "while objective job qualifications

7

should be considered in evaluating the plaintiff's prima facie case, the question of whether an employee possesses a subjective quality, such as leadership or management skill, is better left to the later stage of the *McDonnell Douglas* analysis").

Plaintiff proffers sufficient evidence to establish that he was qualified for the job. The evidence in the record shows that Plaintiff has a BS in business from Rutgers University. (Docket #106-7; Exhibit E.) Moreover, Plaintiff has held several vice president of sales positions for different companies throughout the years. (Docket #106-7; Exhibit E.) He also served as vice president of business development once before he joined HTMT. (Docket #106-7; Exhibit E.) Furthermore, Ken Gary, one of Plaintiff's supervisors at HTMT, testified that he had worked with Plaintiff before joining HTMT at Rutman, a company where Plaintiff was his direct supervisor. "[T]hrough that supervision, clearly, [Gary] developed insight and skills [that he] didn't have previously." (Docket #103-18: 4, 9; Exhibit P, 13: ¶¶4-5, 32: ¶¶6-10.) He also testified that Plaintiff had performed well as the vice president of sales at Rutman. (Docket #103-18: 9; Exhibit P, 32: ¶¶11-22.) Gary explained that once he resigned from HTMT, he thought that Plaintiff was his obvious replacement as Vice President of Sales. (Docket #103-18: 12; Exhibit P, 44: ¶¶6-13.) Similarly, Ramesh Anand, Plaintiff's supervisor after Gary left HTMT, testified that he thought Plaintiff had the skills to generate sales in the hospitality/travel vertical. (Docket #106-5, 26; Exhibit G, 85: ¶¶15-20.) This is sufficient to show that Plaintiff had the necessary qualifications for the Vice President of Business Development position.

Finally, Defendant argues that Plaintiff cannot establish the last element of the prima facie case because Defendant did not hire anyone to replace him once it terminated his employment.[3] (Defendant's Br., 22.) Plaintiff, however, does not have to show that Defendant

---

[3] Though Sarkar states in a sworn affidavit that no one was hired to replace Plaintiff, (Docket #106-24, ¶41.), Anand testified that HTMT hired Steve Schanz around the same time it fired Plaintiff. (Docket #106-5, 13; Exhibit G, 36:

8

hired a replacement. Instead, he has to demonstrate that he "was ultimately replaced, *or the position was filled* by, a younger person." *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 974 (3d Cir. 1998) (emphasis added).

When determining whether a younger employee replaced an age discrimination plaintiff for the purpose of establishing a prima facie case, the Third Circuit has considered whether the employer transferred the terminated employee's duties to a younger person. In *Sempier v. Johnson & Higgins*, the Court reasoned that the transfer of duties, even if temporary, is probative in the fourth-prong analysis. *See Sempier*, 45 F.3d at 729-30. The defendant-employer in *Sempier* ultimately replaced the plaintiff with someone who was only four years younger than him. *Id.* Yet, four months before the ultimate replacement took over the plaintiff's duties, the employer had transferred "a substantial portion" of the plaintiff's responsibilities to an employee that was "well over ten years younger than [the plaintiff]." *Id.* at 730. The Third Circuit noted that, though the district court held that the four-year age difference between the ultimate replacement and the plaintiff was insufficient to establish a prima facie case of age discrimination, courts are not "limited to considering only [a plaintiffs'] final replacement." *Id.* at 729. Instead, the Court concluded that "[t]he combined differences in age between [the plaintiff] on the one hand and [his ultimate and temporary replacements] on the other is clearly sufficient to satisfy the fourth prong of a prima facie case by raising an inference of age discrimination." *Id.* at 730.

Here, Plaintiff proffers sufficient evidence to satisfy the last element of a prima facie age discrimination case, given the reasoning in *Sempier* and the fact that establishing a prima facie case is not an onerous burden. The record makes clear that Plaintiff's sole responsibility as

---

¶¶ 2-6.) Anand also explained that Schanz took over the DriveCam account, which Plaintiff had been working on before he left HTMT. (Docket #106-5, 12; Exhibit G, 29: ¶¶ 2-18.) This Court, however, could not find evidence of Schanz's age in the record.

Defendant's Vice President of Business Development was to sell the company's services. (Defendant's Rule 56.1 Statement, ¶7.) It is also clear that Plaintiff was assigned to the DriveCam account until HTMT fired him. (Docket #106-5, 48; Exhibit K.) That account was one of only two "shortlisted vendors" that Plaintiff was "actively working on." (Plaintiff's Rule 56.1 Statement, Disputed Material Fact, ¶50; Defendant's Response to Plaintiff's Disputed Material Facts, ¶¶46, 50.) Anand, who was 15 years younger than Plaintiff, testified that he made the DriveCam sale once Plaintiff left. (Docket #106-5, 12; Exhibit G, 29: ¶¶ 2-18; Plaintiff's Rule 56.1 Statement, Disputed Material Fact, ¶46; Defendant's Response to Plaintiff's Disputed Material Facts, ¶46.) Anand explained, however, that Plaintiff had worked on the DriveCam deal before he left, that Plaintiff had been the HTMT contact for DriveCam, and that if Plaintiff had still worked for Defendant, he would have been the person in charge of closing that sale. (Docket #106-5, 37; Exhibit G, 132: ¶¶ 2-15.) The DriveCam deal was Anand's only sale while working at HTMT. (103-24, ¶43.) Thus, ultimately there are disputed issues of material fact as to who took over Plaintiff's duties once he was terminated and whether he was eventually replaced.

B. **Plaintiff Proffers Sufficient Evidence that Would Allow a Reasonable Finder of Fact to Find that Defendant's Proffered Legitimate Non-Discriminatory Reason for Terminating Him is Pretextual.**

Defendant has proffered Plaintiff's poor sales performance as its legitimate non-discriminatory reason for terminating him. To survive summary judgment, Plaintiff must "proffer evidence that is sufficient to allow a reasonable finder of fact to find by a preponderance of the evidence" that the proffered reason is "false or pretextual." *Sarullo,* 352 F.3d at 797. In order to do so, Plaintiff must put forth evidence from which this Court "could either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the

10

employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510 (1993); *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 523 (3d Cir. 1992)). A plaintiff satisfies the first prong of this test by presenting sufficient evidence that "demonstrate[s] such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder *could* rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.'" *Id.* at 765 (quoting *Ezold*, 983 F.2d at 531) (emphasis in original).

Importantly, when determining whether a proffered reason is pretext, this Court "must review the record 'taken as a whole.'" *Reeves*, 530 U.S. at 150 (quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). This Court must also "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Id.* (citing *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554–555 (1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–251 (1986); *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 696, n. 6 (1962)). It is up to the jury to weigh the evidence, determine the credibility of testimony, and draw the necessary inferences from each. *Id.* As such, this Court must determine whether Defendant's proffered reason is pretext by giving "credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Id.* at 151 (quoting C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 300 (2d ed. 1995)).

Here, Plaintiff offers sufficient evidence to cast doubt on whether Defendant's proffered legitimate non-discriminatory reason to terminate his employment was true. The testimony of

Anand, Plaintiff's supervisor at the time he was fired, directly contradicts Defendant's proffered legitimate non-discriminatory reason for terminating Plaintiff's employment.[4] Anand testified that Defendant's decision to terminate Plaintiff's employment was not based on Plaintiff's sales performance. (Docket #106-5, 31; Exhibit G, 108: ¶¶18-22.) Instead, he explained that Defendant terminated Plaintiff because there was an overlap between Plaintiff's sales effort and the sales effort of Defendant's recently acquired company, Affina. (Docket #106-5, 27; Exhibit G, 89: ¶¶ 24-25 – 90: ¶¶1-8.) Though he admitted that he was not personally responsible for the adverse action, he discussed this issue with Varadan and Sarkar and was told by them to come up with a solution to the overlap. (Docket #106-5, 27; Exhibit G, 89: ¶¶ 9-21.) The solution that Anand suggested was to assign Plaintiff to an additional sales vertical, hospitality/travel. (Docket #106-5, 18; Exhibit G, 56: ¶¶ 3-11.)  It is clear from Anand's testimony that his discussion with Varadan and Sarkar about Plaintiff's ability to sell did not have to do with Plaintiff's past performance. Instead, Anand's discussion with HTMT's president and CEO was focused on Plaintiff's ability to sell once Defendant acquired Affina.

    In addition to Anand's testimony, Plaintiff puts forth evidence of the circumstances of his dismissal that demonstrate weaknesses in Defendant's proffered reason. While Defendant claims that it assigned Plaintiff to the hospitality/travel vertical to help him improve his sales numbers, Plaintiff proffers evidence that suggests that this is unlikely. According to Anand, it typically took 12 to 18 months for someone to make a sale in a vertical. (Docket #106-5, 18; Exhibit G, 55: ¶¶ 18-20, 56: ¶¶3-11.)  Though Defendant disputes how long it takes to make a sale, Sarkar

---

[4] Defendant argues that Anand's testimony should not be given credence because he no longer works for HTMT and is not authorized to speak on its behalf. (Defendant's Reply Br., 7.) However, Defendant does not cite to any binding authority that holds that an ex-manager's testimony should be ignored simply because he no longer works for one of the parties to an action. As Plaintiff's manager at the time of Plaintiff's dismissal, Anand has a first person account of the events leading up to the adverse employment action. Plaintiff's counsel deposed him and Defendant's counsel had the opportunity to cross-examine his testimony. Thus, this Court will consider Anand's testimony in making its determination.

conceded that he did not expect Anand to make a sale within the first 60 days of starting with HTMT. (Docket #103-21, 19; Exhibit S, 72: ¶¶11-25 – 73: ¶¶1-5.) Sarkar stated that the conversations to terminate Plaintiff began some time in 2006. (Docket #103-21, 16; Exhibit S, 58: ¶¶5-14.) Defendant, however, did not assign Plaintiff to the new sales vertical until February 2007. (*Id.*) Once assigned to that new vertical, Plaintiff only had 45 days to make a sale before HTMT terminated him. (Docket #103-21, 17; Exhibit S, 64: ¶¶17-24.)

Anand testified that he was the one who suggested to Sarkar that Plaintiff needed to "show traction" by the end of March 2007. (Docket #106-5, 24; Exhibit G, 80: ¶¶7-16, 83: ¶¶8-15.) Still, he explained that making some traction meant making contacts with new potential clients, not closing a sale. (Docket #106-5, 25-26; Exhibit G, 84: ¶¶ 23-25 – 85: ¶¶1-8.) Even then, according to Anand, having only two months to make connections with new potential customers was an "aggressive timeline." (Docket #106-5, 26; Exhibit G, 87: ¶¶20-25 – 88: ¶¶1-3.) Anand noted, however, that "a seasoned sales person like [Plaintiff]" could do it. (Docket #78-2, 81; Exhibit G, 87: ¶¶20-25 – 88: ¶¶1-3.) These facts sufficiently call into question whether Plaintiff was given a real chance to improve his sales.

There is also enough evidence in the record that could lead a finder of fact to question whether the metric by which Defendant measured Plaintiff's sales performance was arbitrary. Defendant claims that it fired Plaintiff because he did not meet the $2 million sales quota. (Docket #103-21:17; Exhibit S, 64: ¶¶21-25 - 65: ¶¶1-2; Docket #103-24: ¶36.) Yet, none of the other HTMT salespeople identified in the record met this requirement. (Docket #103-24, ¶¶42-43.) Devnani did not make any sales and Anand's total revenue from the DriveCam deal was less than $1M. (*Id.*) In fact, Defendant disputed Plaintiff's claim that he had the most sales in the 2006/2007 fiscal year by pointing to Satish Kumar's total sales of $1,893,201.00 for the same

year. (Defendant's Reply Br., 7 (citing Docket #103-24: ¶42).) Because the evidence shows that none of the other salespeople met this quota, Defendant's justification for firing Plaintiff – namely that Plaintiff was performing poorly because he failed to reach this sales requirement – is unconvincing.

All of these facts, together with Plaintiff's prima facie evidence, would allow a reasonable finder of fact to find that Defendant's proffered reason is pretext for age discrimination. Because Plaintiff offers evidence that casts doubt on whether Defendant fired him for his poor job performance, this Court finds that there is a genuine issue for trial. As such, Defendant's motion for summary judgment as to Plaintiff's claim of age discrimination under the ADEA is denied.

C.  The Determination of Whether Plaintiff's Damages Should be Limited to Back Pay Is Premature.

Finally, Defendant argues that "in the event that [Plaintiff's] termination is held to be unlawful[,]" his damages should be limited to back pay. (Defendant's Br., 31.) Specifically, Defendant contends that: (1) Plaintiff should not recover front pay because: (a) Plaintiff obtained substantially equivalent employment but failed to exercise diligence in keeping his new positions and, (b) the after-acquired evidence doctrine is applicable in this case since Defendant discovered that Plaintiff made material misrepresentations on his resume; and, (2) Plaintiff is not entitled to liquidated damages because he cannot show that his dismissal from HTMT was a willful violation of the ADEA. (Defendant's Br., 31, 36, 38.) Defendant does not argue, however, that certain type of damages are per se unavailable to Plaintiff under the ADEA. Instead, based on Defendant's arguments, the determination of whether or not Plaintiff is entitled to front pay and liquidated damages requires resolving issues of fact.

14

Given Defendant's argument, it is important to note that this Court does not hold that Plaintiff's termination was unlawful. By denying Defendant's motion for summary judgment, this Court finds that there are sufficient issues of material facts for this case to go to trial. Ultimately, it would be up to a jury to determine whether Defendant fired Plaintiff because of Plaintiff's age. Thus, the determination of whether Plaintiff is entitled to any damages at all is premature at this point.

### IV.     **CONCLUSION**

For the reasons set forth above, Defendant's motion for summary judgment [CM/ECF No. 103] is denied.

An appropriate Order accompanies this Opinion.

Jose L. Linares
United States District Judge

Dated: June 26, 2014